# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MICHAEL PARKS, #146763,

    Petitioner,        Case Number: 2:08-CV-10779

v.                HON. ANNA DIGGS TAYLOR

KENNETH ROMANOWSKI,

    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Michael Parks, a state inmate currently incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for solicitation of armed robbery, home invasion, and armed robbery. For the reasons set forth below, the Court denies the petition.

## I.

Petitioner's convictions arise from a home invasion that occurred on January 21, 2002, in the city of Lansing. Petitioner was convicted for his role in soliciting Kevin Jones and Tucker Johnson to commit the robbery and for his conduct in aiding and abetting them.

Michael Crawford testified that, on January 21, 2002, he was staying at the apartment of his friends John Vorisek and Lindsay Ventre in Lansing, Michigan. Crawford slept on the couch. At some point during the night, he heard a knock at the door. He looked through the peep hole and saw a man standing outside the door. He opened the door and three men pushed

through the door, one of whom was holding a gun to his face. One of the men corralled Crawford and others in the apartment into one room. One of the men asked Crawford if he had any money and he handed over his wallet.

John Vorisek testified that on the night of the robbery, he was in his bedroom when he heard a scuffle coming from the outer room. He went to investigate and saw Crawford crawling on the floor and three men, one of whom pointed a gun at him. Vorisek was ordered to his bedroom and told to lie on the floor while the men searched his room, taking whatever money they found. Vorisek admitted that he had been selling marijuana out of his home. The intruders asked him where the cocaine was. Vorisek denied having or selling any cocaine, but testified that he gave the intruders the marijuana that he had in his home. Vorisek also testified that his and several other cell phones were taken from the apartment. Vorisek testified that he had seen Petitioner in his home on two occasions, including either the day of or the day before the robbery. He did not identify any of the intruders as Petitioner.

Lindsay Ventre testified consistently with Vorisek and Crawford. She testified that the intruders took a cell phone and cash from her.

Police Detective Marcel Holloway testified that he was assigned to investigate the home invasion and robbery. By tracking calls made on the stolen cell phones, he identified Kevin Jones as a suspect in this case. He interviewed Kevin Jones, who identified Tucker Johnson, Gary Young (also known as Gary Morris), and Petitioner as being involvement in the crime.

Tucker Johnson, who was testifying pursuant to a plea agreement, testified that on January 21, 2002, Petitioner called him and asked him if he would rob a house for him. Petitioner came to pick him up. In the vehicle were Petitioner, Kevin Jones, and Gary Young.

2

Petitioner told Johnson he wanted Johnson and the other men to rob a man named "Steve" who had a lot of marijuana in his home. Petitioner drove the three men to the apartment, and directed them to a particular apartment he wanted them to rob. After the robbery was completed, Johnson and the other two men left the apartment and were driven away by Petitioner.

Kevin Jones, who was also testifying pursuant to a plea agreement, testified that Petitioner called him on January 21, 2002, and told Jones that he had a robbery he wanted Jones to commit. Petitioner explained that he wanted Jones to rob the "weed man." Petitioner drove Jones, Tucker Johnson and Gary Young to an apartment complex. Petitioner directed them to a particular apartment that he wanted them to rob. Petitioner waited outside in his vehicle while the robbery took place. Petitioner drove Jones and the others away from the scene after the robbery.

Petitioner did not testify in his own defense.

## II.

Following a jury trial in Ingham County Circuit Court, Petitioner was convicted of solicitation of armed robbery, home invasion, and armed robbery. On October 1, 2003, he was sentenced to twenty-five to forty years' imprisonment for the armed robbery conviction, twenty to forty years' imprisonment for the solicitation conviction, and twenty to forty years' imprisonment for the first-degree home invasion conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claim:

> Did the trial court violate Mr. Parks' federal constitutional rights at sentencing by scoring the statutory sentencing guidelines based on its finding of additional facts, which the prosecutor had not charged, which had not been submitted to the jury, and which Mr. Parks had not admitted?

3

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *People v. Parks*, No. 251808 (Mich. Ct. App. May 10, 2005).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, which was denied. *People v. Parks*, 474 Mich. 907 (Mich. Oct. 31, 2005).

Petitioner next filed a motion for relief from judgment in the trial court raising the following claims: (i) ineffective assistance of trial counsel; (ii) ineffective assistance of appellate counsel; and (iii) new trial should be granted based on newly discovered evidence. The trial court denied the motion. *People v. Parks*, No. 03-405-FC (Ingham County Cir. Ct. Sept. 12, 2006). Petitioner filed applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court. Both Michigan appellate courts denied leave to appeal. *People v. Parks*, No. 277250 (Mich. Ct. App. June 27, 2007); *People v. Parks*, 480 Mich. 953 (Mich. Nov. 29, 2007).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the following claims:

> I. The state court's decision to deny Petitioner's claim of ineffective assistance of counsel and [failure] to grant him an evidentiary hearing to substantiate his claim was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.
>
> II. The state court failed to establish Petitioner's guilt beyond a reasonable doubt.

### III.

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

4

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

### IV.

### A.

In his first habeas claim, Petitioner argues that his appellate attorney was ineffective in failing to file on direct appeal the affidavit of co-defendant Kevin Jones allegedly exonerating Petitioner and failing to request an evidentiary hearing on his ineffective assistance of trial counsel claim.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-

pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). The prejudice standard in the context of an alleged failure to raise issues on appeal requires a showing that there is "a reasonable probability, but for counsel's unreasonable failure . . . he would have prevailed on his appeal." *Smith*, 528 U.S. at 285. The process of "'winnowing out weaker arguments on appeal' " is "the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome.'" *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir.2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986)). "An appellate advocate may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner,' even though counsel may have presented strong but unsuccessful claims on appeal." *U.S. v. Cook*, 45 F.3d 388, 395

(10th Cir. 1995) (*quoting Page v. U.S.*, 884 F.2d 300, 302 (7th Cir. 1989)). *See also Coddington v. Langley*, 202 F. Supp. 2d 687, 698 (E.D. Mich. 2002) ("A 'dead-bang winner' has been defined as 'an issue which was obvious from the trial record.'") (*quoting Cook*, 45 F.3d at 395).

The trial court, the last state court to issue a reasoned opinion regarding this claim, held that Petitioner failed to satisfy either *Strickland* prong. The trial court held that "[a]ppellate counsel was correct in noting that courts do not give credence to the statements of recanting witnesses . . . [which are] 'generally considered untrustworthy.'" *Parks*, slip op. at 4, *quoting People v. Martin*, 2005 LEXIS 1217 at *10 (Mich. Ct. App. May 17, 2005). The trial court concluded that "appellate counsel's decisions were made in the exercise of reasonable professional judgment." *Id.* (internal quotation omitted).

This Court also recognizes that "[r]ecanting affidavits and witnesses are viewed with extreme suspicion." *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991). In this case, Jones' affidavit also lacks credibility because it is contrary to his sworn testimony. *In re Byrd*, 269 F.3d 585, 606 (6th Cir. 2001). In addition, the timing of Jones's affidavit renders it lacking in credibility because Jones executed the affidavit only after he had been convicted and had nothing to lose. *Id. citing Drew v. Scott*, 28 F.3d 460, 463 (5th Cir.1994) ("we still have little confidence in [the codefendants] postsentencing truth experience because he had nothing whatsoever to lose by incriminating himself after receiving a 60-year sentence"; rejecting the state prisoner's "new evidence" in the form of recently-obtained statement of a third prisoner claiming that he heard the codefendant take sole credit for the murder before he pled guilty to that murder); *United States v. Vergara*, 714 F.2d 21, 23 (5th Cir. 1983) (holding that the district court may deny the defendant a new trial, without an evidentiary hearing, if it determines that a

7

previously silent accomplices's postconviction willingness to exculpate his codefendant is not credible); *Drew v. State*, 743 S.W.2d 207, 228 (Tex. Crim. App. 1987) ("It is not unusual for one of two convicted accomplices to assume the entire fault and thus exculpate his codefendant by the filing of a recanting affidavit or other statement.").

Given the suspicious eye generally cast upon recanting affidavits and the other evidence against Petitioner, the trial court's conclusion that appellate counsel was not ineffective in failing to raise this claim on direct appeal is not contrary to or an unreasonable application of *Strickland* or *Jones*.

Additionally, to the extent that Petitioner claims the state courts improperly failed to conduct an evidentiary hearing pursuant to *People v. Ginther*, 390 Mich. 436 (1973), this claim is not cognizable on habeas review. *Ginther* does not confer an absolute right to an evidentiary hearing in all cases where a defendant alleges ineffective assistance of counsel, and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Therefore, this portion of Petitioner's second claim is not cognizable on habeas corpus review.

**B.**

In his second claim, Petitioner argues that the prosecutor failed to establish his guilt beyond a reasonable doubt.

The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilty beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

> [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at trial established guilty beyond a reasonable doubt." Instead, the

8

> relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318-19 (internal citation and footnote omitted). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

Under Michigan law, a person is guilty of solicitation to commit armed robbery if the person offers to give, promises to give, or gives any money, services, or anything of value to another individual and the person intended that what he said or did would cause an armed robbery to be committed. Mich. Comp. Laws § 750.157b. The elements of armed robbery are (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a dangerous weapon or with an article used or fashioned in such a way as to lead a reasonable person to believe that it is a dangerous weapon. *People v. Ford*, 262 Mich. App 443, 458; 687 NW2d 119 (2004). And, the elements of first-degree home invasion are "(1) the defendant broke into and entered a dwelling without permission, (2) while intending to commit or actually committing a felony, larceny, or assault while entering, exiting, or present within the dwelling, and (3) another person was lawfully present in the dwelling or the defendant was armed with a dangerous weapon." *People v. Johnson*, No. 285172, 2009 WL 2974771, at *1 (Mich. Ct. App. Sept.17, 2009) (per curiam).

"To establish that a defendant aided and abetted a crime, a prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or knew that the principal intended to commit

9

the crime at the time he gave aid and encouragement." *Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007), *citing People v. Carines*, 460 Mich. 750, 597 N.W.2d 130, 135 (1999). Under Michigan law, an "aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *People v. Carines*, 460 Mich. 750, 758 (1999). "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v. Lawton*, 196 Mich. App 341, 352 (1992)

Both Tucker Johnson and Kevin Jones testified that Petitioner contacted them with the express purpose of committing a home invasion and robbery. They both also testified that Petitioner drove them to and from the crime scene and specifically identified the apartment to be robbed. The jury reasonably could have found this testimony credible. Petitioner provides no information which would call their credibility into doubt. Further, "the assessment of the credibility of witnesses is generally beyond the scope of review" in a federal habeas corpus proceeding. *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

While the evidence against Petitioner was not overwhelming, viewed most favorably to the prosecution, it was sufficient to find Petitioner guilty beyond a reasonable doubt. Thus, the Michigan Court of Appeals' conclusion was not contrary to or an unreasonable application of *Jackson*. Therefore, the Court denies habeas relief on this claim.

## V.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition does not state a claim upon which habeas relief may be warranted. Therefore, the Court denies a certificate of appealability. The Court also denies Petitioner leave to proceed *in forma pauperis* on appeal as any appeal would be frivolous and cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

## VI.

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability and leave to proceed *in forma pauperis* on appeal are **DENIED**.

DATED: April 15, 2010                                               <u>s/ Anna Diggs Taylor</u>

ANNA DIGGS TAYLOR
UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on April 15, 2010.

Michael Parks, #146763
St. Louis Correctional Facility
8585 N. Croswell Rd
St. Louis, MI 48880                                         s/Johnetta M. Curry-Williams
                                                            Case Manager